IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA ELIAS BORNHAUSER,

    Plaintiff,

        v.                                                                         No. 16cv302 WJ/GBW

CIBOLA GENERAL HOSPITAL,
SHEILA COX, and
ANNETTE SATTERLEY,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed April 4, 2017 (Doc. 30). Plaintiff is proceeding *pro* se. Having reviewed the parties' briefs and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

Plaintiff Sandra Bornhauser is suing her former employer, Cibola General Hospital ("Cibola Hospital" or "the Hospital") under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2615(a) and Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101. Ms. Bornhauser worked as a medical coder remotely from her home in California since before 2013. A coder is someone who takes a healthcare provider's patient notes and charts and turns them into numeric data used for billing purposes. According to Defendants, Plaintiff had been put on notice during October 2014 that her job performance was deficient due to a high error rate in her work. The Hospital decided to terminate her and a phone call with Plaintiff was arranged for October 23,

2014. However, before the phone call took place, Plaintiff announced that she intended to take medical leave. The Hospital refrained from discharging Plaintiff at that time and placed her on medical leave per her request, but when her leave expired, Plaintiff did not return to work. The Hospital considers Plaintiff's employment to be over for lawful reasons.

Plaintiff claims that she suffers from a myriad of disabilities and conditions including but not limited to the following: PTSD, generalized anxiety, panic disorder, depression, panic attacks, right arm rotator cuff tear, right shoulder ACL tear, large loose foreign bodies, plantar nerve lesion in right foot, chondromalacia patellae, etc. *see* Doc. 13 (Joint Status Rep't) at 2-3. Plaintiff contends that Defendants discriminated against her on the basis of her disabilities because she worked a full day on October 22, 2014, and received no notice of termination until after she submitted a medical certificate on October 23, 2014.

The Amended Complaint (Doc. 7) has two counts, asserted against all Defendants: Violation of Title II of the ADA (Count I) and Violation of the FMLA (Count II).

## I. Facts[1]

Defendants offer several pages of facts. The Court deems these facts to be undisputed because Plaintiff offers no evidence or testimony challenging those facts, as required under Fed.R.Civ.P.56(c)(1)(A). Instead, Plaintiff offers a section entitled "Undisputed Facts" which mirror the facts presented by Defendants. For example, Plaintiff's Undisputed Facts 3-9 describe Plaintiff's poor work performance and notes that Ms. Satterley decided by October 22, 2014 that it was time to end Plaintiff's employment because of Plaintiff's high level of coding errors. Plaintiff also states in this section of facts that Ms. Satterley "decided to refrain from discharging Plaintiff and decided to honor her request for time off." Pltff's "Undisp. Fact" 14. Plaintiff has therefore conceded all the material facts presented by Defendant and rests her case on what the

---
[1] Support for Defendants' facts are included in the briefs and need not be repeated here.

Court considers to be her own interpretations of these facts and irrelevant miscellaneous arguments, which the Court will discuss below. As a result, Defendants' facts are deemed undisputed. *See* D.N.M. LR-Civ. 56.1(b) (facts in dispute must be numbered, non-movant must refer with particularity to the part of record upon which nonmovant relies to dispute a fact, and "[a]ll material facts" that movant sets forth "will be deemed undisputed unless specifically controverted").

Plaintiff also failed to comply with several local rules of this Court. For example, she attached 281 pages of exhibits to her response, which is a number well in excess of the 50-page limit, nor did she seek an extension of this limit from opposing party. *See* D.N.M.LR-Civ. 10.5. None of these exhibits are referenced in Plaintiff's brief or highlighted as required under this Court's local rules. *See* D.N.M.LR-Civ. 10.5. While the Court affords pro se litigants some leeway, they are still expected to follow the rules. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). This Court does not intend to comb through the voluminous exhibits presented by Plaintiff to make her case for her, particularly when she has conceded the material facts.

A. <u>Plaintiff's Work Performance</u>

Defendants present facts showing that Plaintiff's job was in jeopardy.

On October 1, 2014, Plaintiff's supervisor and the Health Management Director of the Hospital, Annette ("Annie") Satterley, notified Plaintiff and the other two coders working for Cibola that they were expected to meet an average rate of 10 minutes per chart. While passing the coding test was not a job requirement, Plaintiff had taken the outpatient coding test three times and failed it. She took the test once in 2013 and twice in 2014, and for at least one of those administrations, Plaintiff took a preparation course before the exam.

On October 9 and 10, 2014, Ms. Satterley conducted an audit and found that Plaintiff's accuracy rate was 70% when it needed to be 95% or greater. Ms. Satterley told Plaintiff she would need to put her on another performance improvement plan. Plaintiff had been on performance improvement plans before.

The October 10, 2014 performance improvement plan (described on a form entitled "Employee Warning Record") reiterated the 95% accuracy standard required for all coders and noted that Plaintiff was at 70% on the recent audit. On October 21, 2014, a productivity concern arose when Ms. Satterley found that Plaintiff had taken 5.75 hours to complete 10 charts, which was outside of the hospital mandate/expectations and beyond the 10 minute per chart expectation that the coders had been told about on October 1, 2014. At the same time, Ms. Satterley was continuing to audit files for accuracy. In an email on the afternoon of October 21, 2014, Ms. Satterley informed Plaintiff that she found a large amount of errors and that Ms. Satterley needed to make sure Plaintiff understood "that this level of errors can lead up to and include termination."

B.     Termination of Employment

By October 22, 2014, Ms. Satterley decided that it was time to end Plaintiff's employment with Cibola. Ms. Satterley called Plaintiff in the morning of October 23. Plaintiff did not answer. Ms. Satterley left a message, saying to return the call to Sheila Cox's office to discuss the paperwork Plaintiff had submitted earlier in the morning.

The paperwork at issue was a "Work Restrictions Form" that Plaintiff had obtained from her physician, Dr. Rama Thiru Pathi, on October 22, 2014 at 2:24 PM. Plaintiff emailed that form to Ms. Satterley on October 23, 2014 early in the morning, before Ms. Satterley called her. The October 22 Work Restrictions Form indicated that Plaintiff needed to be off work until

November 10, 2014, for a rotator cuff tear from an injury the month before. Plaintiff had a previously scheduled and approved vacation from November 1 through 10, 2014.

Later in the day on October 23, Plaintiff went to a friend's house and placed the call to Ms. Cox on speaker phone. Ms. Cox first said she needed to get Ms. Satterley. Plaintiff responded by saying that because she had submitted medical certification, the matter involved only Ms. Cox as the Human Resource Director and contact with Ms. Satterley was unnecessary until her return to work. Ms. Cox fetched Ms. Satterley anyway. When Ms. Satterley came on the line, according to Plaintiff, she told Plaintiff she was terminating her employment as of the day before (what Plaintiff refers to as "backdating," *see* Ex. A at 110:23-25: "Well, you can't backdate a termination.").

Plaintiff responded by questioning why she hadn't been told earlier and why there wasn't a final check ready, with a certified letter asking for the return of equipment. Plaintiff asserted that in any event she could not be terminated on "medical cert." At that point, Plaintiff said she wasn't going to deal with this anymore, that she was "starting to get into a panic mode" and had to get off the phone, so she hung up. That was the end of the call on October 23, 2014. Ms. Satterley decided to refrain from discharging Plaintiff and decided to honor her request for time off. The only dispute offered by Plaintiff in these facts is that she claims that Ms. Satterley decided to terminate her after she requested medical leave. Doc. 35 at 16. However, Plaintiff offers no facts to suggest this, and Plaintiff does not dispute any of the other facts regarding her poor work performance, or the fact that she did take the full FMLA leave after October 23, 2014 as recommended by her doctor. Thus, the undisputed facts bear out Defendants' position that the Hospital decided to terminate Plaintiff but refrained from doing so after her doctor recommended a medical leave of absence.

Plaintiff views it as a coincidence that Ms. Satterley decided to end Plaintiff's employment on the same day that Plaintiff obtained a request from her doctor to be out on medical leave. Sometime after November 1, 2014, Ms. Cox called Plaintiff and asked Plaintiff to fill out FMLA leave forms. Plaintiff had already obtained those forms or was in the process of obtaining them. Plaintiff understood that the FMLA forms were for current employees, not people who have been fired.

On November 6, 2014, Dr. Pathi and Plaintiff completed a "Certification of Health Care Provider for Employee's Serious Health Condition" (U.S. Department of Labor form WH-380-E). In it, Dr. Pathi estimated that Plaintiff would need to work 0 hours per day from October 23, 2014 through January 23, 2015. On November 10, 2014, Plaintiff saw Dr. Pathi again. This time, Dr. Pathi noted that Plaintiff would need to be off work only until January 5, 2015. Plaintiff did not question Dr. Pathi about the "off work" date on the November 10, 2014 Work Restrictions Form. Plaintiff did not tell Dr. Pathi that he did not need to check any boxes regarding returning to work because she no longer worked at Cibola.

In the email transmitting the November 10, 2014 Work Restrictions Form, Plaintiff said she would be happy to return the equipment Cibola provided her to do her work "since I will not be using it in the upcoming weeks," as opposed to saying that she was returning it because her employment was ended. See Ex. M; Pl's Dep. at 128:20 – 129:20.

Plaintiff never received a termination letter. In fact, after October 23, 2014, Plaintiff continued to collect sick pay, plus her unused vacation ("Paid Time Off"), each paid period until they ran out. Cibola issued Plaintiff her final check on January 16, 2015. If Cibola had ended Plaintiff's employment on October 23, 2014, she would have received a lump sum payment for her unused vacation, and she would not have received anything for her unused sick time, which

is a use-it-or-lose-it type of benefit at Cibola. In her deposition, Plaintiff acknowledged that these facts were accurate. Pl's Dep. At 118:22 – 119:11; *see also* Ex. I.

Based on these facts, then, it is undisputed that the Hospital did not fire Plaintiff and instead gave her the medical leave she requested under FMLA.

    C.    <u>Facts Pertaining to Period of Time After Medical Leave</u>

After her final day of work for the Hospital on October 22, 2014, Plaintiff did not contact the Hospital again, and did not return to work.

After Plaintiff's final day of actual work for Cibola (October 22, 2104), her only contacts with anyone at Cibola in a positon of authority were the October 23, 2014 phone call with Ms. Satterley and Ms. Cox, the early November 2014 phone call in which Ms. Cox requested that Plaintiff fill out FMLA forms, and Plaintiff's subsequent email transmitting those completed forms, plus an unemployment hearing. Plaintiff did not contact anyone at Cibola when the leave that Dr. Pathi had designated was up. Pl's Dep. at 131:6 – 133:23; 134:23 – 135:10. Had Plaintiff contacted Cibola when her leave expired, Cibola would have ended her employment for the same performance-related reasons that led to Ms. Satterley's October 22, 2014 rescinded decision to end Plaintiff's employment.

Plaintiff is permanently disabled from working. Her doctors have told her she will never work again. Plaintiff is one hundred percent disabled. Pl's Dep. at 153:2-18; 154:22-25. Plaintiff is not capable of working, with or without an accommodation.

**II.**    **Legal Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. Id. The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

Plaintiff acknowledges that her job required that she pass the coding test which she failed after three attempts and that she was singled out for poor work performance, *see* Ex. A at 58-6; 45:17-19 ("I was terminated for my performance"). Nonetheless, she maintains that Defendants violated her rights under the FMLA and the ADA. Specifically, Plaintiff contends that while Defendants claim they treated her like an employee, they never informed her if the FMLA forms were approved, and never called her about returning to work.

### I. Leave Under the FMLA and the ADA[2]

The FMLA makes it unlawful for a covered "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right." 29 U.S.C. § 2615(a)(1). The Tenth Circuit describes this sort of cause of action as an "interference claim." *Dalpiaz v. Carbon*

---

[2] Plaintiff is suing the Hospital as well as Ms. Cox and Ms. Satterley individually for violations of the ADA. Defendants are correct that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736 (10th Cir. 1999) (citing numerous jurisdictions addressing the issue on both statutes). However, this becomes somewhat of a moot legal issue, since Plaintiff's claims fail as a whole against the Hospital as well.

8

*Cnty.*, 760 F.3d 1126, 1132-33 (10th Cir. 2014).[3]

To establish a claim of FMLA interference under § 2615(a)(1), an employee must show (1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Id*. at 1132 (quoting *Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287 (10th Cir. 2007)). To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—the employee must show "that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.' *Id*. The FMLA does not require the employer to provide leave with pay but lets the employer provide such leave through an employer's paid leave program. 29 U.S.C. § 2612(d); 29 C.F.R. § 825.507(a).

The ADA requires covered employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). "[A] reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation." *Hudson v. MCI Telecomms. Corp*., 87 F.3d 1167, 1169 (10th Cir. 1996).

For purposes of this motion, Defendants do not dispute that the Hospital is a covered employer under the FMLA and ADA or that Plaintiff was entitled to FMLA leave, i.e., 12 weeks measured from October 23, 2014, which would be January 15, 2015. For purposes of this motion, Defendants also do not contest that Plaintiff's most recent request for accommodation –

---

[3] Plaintiff's claim is clearly asserted as an interference claim, since she was not denied her request for leave. *See Campbell v. Gambro Healthcare,* 478 F.3d 1282, 1287 (10th Cir. 2007) ("A retaliation claim differs from an interference claim "with respect to the timing of the adverse action."), cited in *Valdez v. McGill*, 462 Fed.Appx. 814, 822, 2012 WL 432635, at *7 (10th Cir. 2012).

a leave of absence or time off work of the duration set forth by Dr. Pathi on November 10, 2014, i.e. leave until January 5, 2015 – was reasonable under the ADA.

Plaintiff claims that she was terminated on October 23, 2014, with the termination date backdated to October 22nd—one day earlier. *See* Doc. 35 at 15. However, the undisputed evidence shows that Plaintiff was never actually terminated because while Ms. Satterley had come to the decision to terminate Plaintiff, she refrained from doing so in light of Plaintiff's request for medical leave. The overwhelming evidence supports Defendants' position that Plaintiff was not terminated at that time. According to the undisputed facts, had Plaintiff been terminated, she would had received a lump sum. Instead, during her leave, Plaintiff continued to receive full, regular paychecks for the period of leave recommended by her doctor. Those paychecks consisted of a combination of unused accrued vacation plus sick leave. Plaintiff also turned in FMLA forms to be able to use medical leave, which was a benefit for current employees only. *See* Ex. A (Pltff's Dep. at 118:22-119:11; at 122; *see also* 29 U.S.C. § 2612(d); 29 C.F.R. § 825.507(a) (use of paid leave under the FMLA). Also, when Plaintiff saw Dr. Pathi on her two visits in November 2014, she never indicated to him that it was not necessary to fill out the Work Restriction Forms anymore because she did not work at the Hospital anymore when she saw him on her two visits in November 2014. In short, based on her conduct and the underlying circumstances, Plaintiff was never actually terminated, and she understood that she was not terminated. Plaintiff offers nothing to dispute Defendants' facts which unmistakably show that she was still employed during the time she took FMLA leave and was not terminated.

Plaintiff's claim falters under the second element of her FMLA interference claim and under the very first step of the reasonable accommodation ADA analysis because Plaintiff was not prevented from using her FMLA-allotted leave time and was given the very accommodation

requested by her own doctor. Even though Defendants had decided to terminated Plaintiff based on her poor performance *before* Plaintiff requested medical leave under the FMLA, they reversed that decision immediately when Plaintiff made the request, and Plaintiff was able to take the entire period of leave recommended by her own doctor while she still received compensation by the Hospital in the form of sick leave—just as other current employees would receive. In other words, the Hospital treated Plaintiff like the employee she was at the time and gave Plaintiff the leave she requested, and therefore Defendants did not violate the law. See 29 U.S.C. § 2612(a)(1) (FMLA requires a total of 12 weeks of leave per year); *Nebeker v. Nat'l Auto Plaza,* 743 Fed.Appx. 817 (10th Cir. 2016 (affirming summary judgment on ADA failure to accommodate claim where supervisor gave plaintiff all the leave she requested and plaintiff never requested more); *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001) (no ADA violation where there was no indication that employer refused any requests for leave from plaintiff).

Plaintiff contends that the true reason for her termination was discriminatory and based on her disability, rather than her performance. However, there is no evidence at all to support this contention. In her deposition, Plaintiff stated that she requested an accommodation in the form of medical leave. Ex. A at 137:16-24 ("I was just requesting medical treatment at the same time that I was going to be off . . . ."). It is undisputed that Plaintiff *did* receive the entire period of leave that she requested and as recommended by her own doctor. Also based on the undisputed facts, Defendants were ready to terminate Plaintiff just prior to Plaintiff's request for medical leave, and refrained from doing so only because Plaintiff had requested medical leave.

Plaintiff appears to argue that Defendants interfered with her right to leave under the FMLA because Defendant decided to terminate her immediately *after* she requested medical

11

leave. However, regardless of how Plaintiff may have understood her employment status while on medical leave, it is undisputed that Defendants retracted their decision to terminate her and instead granted Plaintiff the medical leave she requested so as *not* to interfere with any rights Plaintiff had under the FMLA.

**II.     Reinstatement**

Although not alleged in the complaint, Plaintiff contends in her response that Defendants violated the FMLA by not automatically reinstating her following the expiration of the twelve-week leave period under the FMLA and/or the end point of her leave as designated by Dr. Pathi on November 10, 2014.

There is no merit to this claim as well. Employees on FMLA have the right to be returned to work upon conclusion of their statutory leave period. 29 U.S.C. §2614(a)(1). At the same time, however, an employee is not immune from the impact of matters unrelated to the leave." 29 U.S.C. §2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . . (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave; *see also Gunnell Utah Valley State College,* 152 F.3d 1253, 1262 (10th Cir. 1998) *(*affirming summary judgment for employer on FMLA interference claim, citing 29 C.F.R. § 825.216(a), which notes that an employee on FMLA leave has "has no greater rights than an employee who remains at work").

In order to succeed on an interference claim, Plaintiff must show that the denial of reinstatement was related to the exercise or attempted exercise of her FMLA rights. Defendants had legitimate, performance-based concerns about Plaintiff's productivity and accuracy, and they communicated these concerns to Plaintiff—including the warning that was given to Plaintiff on

October 21, 2014 that her job was in jeopardy—weeks *before* Plaintiff's doctor recommended leave. Based on these material and undisputed facts, there is simply no causal connection to be found between Plaintiff's request for leave under the FMLA and Defendants' intention to terminate her. On the other hand, Plaintiff offers not a scintilla of evidence to suggest that if Defendants refused to reinstate Plaintiff, their decision would have been made with the purpose of interfering with her rights under the FMLA.

Plaintiff had no expectation of reinstatement under the FMLA. It is undisputed that Ms. Satterley had decided to terminate Plaintiff by October 22, 2014. Pltff's Undisp. Fact 9. An interference action under the FMLS requires that a plaintiff prove that the employer's action was related to the exercise or attempted exercise of the employee's FMLA rights. *Metzler v. Fed'l Home Loan Bank,* 464 F.3d 1164, 1180 (10th Cir. 2006). Plaintiff's claim fails on this element, since the Hospital would have ended Plaintiff's employment after her leave ended in 2015 for reasons related to Plaintiff's accuracy and productivity. All of these problems that preceded Plaintiff's requests for medical leave and thus are completely unrelated to that leave. In *Gabriel v. Colorado Mountain Medical, P.C.*, the Tenth Circuit affirmed summary judgment for the employer on plaintiff's FMLA interference and found that the employer's decision to terminate plaintiff was not related to her taking FMLA leave where that decision was based on plaintiff's documented performance deficiencies before the leave began and where there was no evidence that the employer's stated lawful reasons for termination were not the real reasons. 628 Fed.Appx. 598 (10th Cir. 2015). Based on the undisputed facts, the decision to discharge Plaintiff was made on October 22, 2014, the day before Plaintiff first requested any leave and several days before her FMLA leave request on November 6th further disconnected those unrelated events. Further, Plaintiff's expectation of reinstatement is bogus not only because she

never contacted her employer about returning to work after her leave was up, but because she was aware of her deficiencies in work performances and had been specifically been warned about them by her supervisors.

In *Glover v. DCP Midstream GP, LLC,* 549 Fed.Appx. 713, 714 (10th Cir. 2013), the Tenth Circuit affirmed summary judgment for an employee alleging an interference / failure to reinstate claim in part because the employee made his first efforts to return to work only after his FMLA-allotted leave period expired). The court considered plaintiff's attempts to return to work as implausible and concluded he had been permissibly terminated for failing to return to work at the end of his leave. Similarly, in this case Plaintiff never attempted to return to work at the Hospital and further takes the position that she cannot work at all. Defts' Facts 27-28 (Defendants consider "Plaintiff to have resigned upon her failure to return at the end of her leave").

Plaintiff is not entitled under the FMLA to be placed in a *better* position than she was before requesting leave, and the uncontroverted evidence indicates that Defendants had intended to fire Plaintiff before the leave was ever requested. Even if Plaintiff had returned to work, she would have been terminated at that point. Therefore, Plaintiff's claim that she should have been reinstated fails under the FMLA.

## II. Plaintiff's Other Arguments

Plaintiff raises other miscellaneous arguments which are irrelevant as claims under the FMLA and the ADA. The Court includes some of them here, along with Defendants' responses, if for no other reason, to emphasize the complete fallacy of these arguments.

Plaintiff contends that no one told her that she was not fired after all in October 2014 and so she didn't know she was on leave. This is not a viable argument on which to base a claim

under either the FMLA or the ADA. The Court is somewhat skeptical of Plaintiff's claim that she believed she had been terminated while on medical leave because there is significant evidence to the contrary. In her deposition, Plaintiff stated that she knew the FMLA forms were filled out by current employees, not terminated employees:

> Q. You understood that those forms aren't – they are for current employees, right? Not people who've been fired. You understand that, right?
>
> A. Yes.

Ex. A at 122:22-25. Plaintiff's response indicates that she was required to fill these forms because she was still employed by the Hospital. Also, Plaintiff did not question Dr. Pathi about the "off work" date on the November 10, 2014 Work Restrictions form, nor did she advise Dr. Pathi that he did not need to check any boxes regarding returning to work. If Plaintiff really believed she had been terminated, it would be reasonable to expect her to advise Dr. Pathi that he need not fill out the "return to work."

However, even assuming that Plaintiff believed she had been terminated, this assumption gets Plaintiff no closer to a viable claim. A misapprehension of employment status does not support a claim under either the FMLA or the ADA. An interference claim under the FMLA requires a showing that an employer interfered with a plaintiff's rights to take FMLA leave by "some adverse action." *See Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 (10th Cir. 2014). The ADA requires an employer to make reasonable accommodations, which may include time off for medical reasons. *See* 42 U.S.C. §12112(b)(5)(A); *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (alleging failure to reasonably accommodate by refusing to provide unpaid leave while seeking necessary medical treatment). It is undisputed that Plaintiff received the requested medical leave, and thus as a matter of law, Defendants did not interfere

with Plaintiff's rights under the FMLA because they reversed their decision to terminate Plaintiff and allowed her to take medical leave. By granted this leave, Defendants also gave Plaintiff the accommodation she requested under the ADA.

As mentioned previously, Plaintiff claims that Ms. Satterley "backdated" the termination of Plaintiff's employment in October 2014, but this is a moot issue because the termination was in fact rescinded. Plaintiff also contends that this "backdating" issue had a "rippling effect" on her. Resp. at 16. The Court assumes that Plaintiff is claiming that she was not reinstated because she thought she was fired and therefore never requested a return to work after her leave was over. However, based on all the available evidence, Plaintiff would not have been reinstated, whether or not she requested a return to work. Defendants were prepared to terminate her even before Plaintiff embarked on her medical leave, and Plaintiff would have ended up being terminated if she requested to return to work, as Plaintiff herself acknowledges. *See* Resp. at 16 ("Cibola could have fired Plaintiff legally when she came back from leave.").

Plaintiff also makes much of the fact that Ms. Cox required her to complete FMLA forms prior to taking leave in order to be paid during leave. Nothing about this assertion resembles an interference claim under the FMLA. Under the FMLA, an employer may require certain specific information related to the employee's health condition, and the employee is required under the statute to furnish this information. 29 U.S.C. §2613.

## CONCLUSION

In sum, the Court finds and concludes that there is no evidence that Defendants interfered with Plaintiff's rights to take FMLA leave by "some adverse action," nor is there any causal connection between Plaintiff's taking of medical leave and Defendants' failure to reinstate Plaintiff. Defendants' intention to terminate Plaintiff was formed weeks before Plaintiff

requested medical leave. Defendants are therefore entitled to summary judgment on Plaintiff's FMLA claim.

The Court also finds and concludes that Plaintiff was given the accommodation she requested in the form of medical leave, and therefore Defendants are entitled to summary judgment on Plaintiff's ADA claim.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 30**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment will be entered separately.

_____
UNITED STATES DISTRICT JUDGE